# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| PATRICIA HOOD, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 3:14-CV-05012-MDH |
| GILSTER-MARY LEE CORPORATION, | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Gilster-Mary Lee Corporation's Motion to Dismiss. (Doc. No. 83). The parties have fully briefed the pending motion and it is ripe for review. After careful consideration of Defendant's Motion, the Court denies it for the reasons set forth herein.

## BACKGROUND

Plaintiffs Patricia Hood, Susan Meyer and Nora De La Rosa originally filed their First Amended Class Action Petition in the Circuit Court of Jasper County, Missouri alleging several causes of action against Defendant Gilster.[1] Plaintiffs bring their current cause of action on behalf of themselves and all others similarly situated alleging they are former or current employees of defendant Gilster which owns and operates a microwave popcorn packaging plant in Jasper, Missouri. Plaintiffs claim they suffer from lung impairment, and/or suffer from lung impairment that has not yet fully manifested, resulting from exposure to natural and artificial

---

[1] Plaintiffs initially raised claims against a number of other defendants, all of whom have been subsequently dismissed by the Plaintiffs.

butter flavoring products, compounds and ingredients, including but not limited to diacetyl, during their employment with Defendant.[2]

Plaintiff Hood worked at the Jasper plant from approximately 2000 – 2001; Plaintiff Meyer worked at the Jasper plant "in approximately the late 1990's to early 2000's;" and Plaintiff de la Rosa worked at the Jasper plant from approximately 1993 to 2000. Plaintiffs specify the purported class to include all persons who, prior to January 1, 2008, worked for a period of one (1) year or more at the Gilster-Mary Lee plant in Jasper, Missouri.

Plaintiffs' claims against Gilster include the following: Count I - premises liability; Count II – negligence; Count III - fraudulent concealment; Count IV - prima facie tort; and Count VIII- equitable medical monitoring. Plaintiffs seek to recover compensatory damages to establish a medical monitoring program, establishment of a trust fund to pay claims for medical monitoring, an injunction for medical monitoring and costs and attorney fees.

## STANDARD OF REVIEW

"To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff must plead facts that show more than a mere speculation or possibility that the defendant acted unlawfully. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court accepts the complaint's factual allegations as true, it is not required

---

[2] The named Plaintiffs in this case specifically allege they "suffer[s] from respiratory disease related to her exposure to natural and artificial butter flavoring products, compounds and ingredients, including but not limited to diacetyl." In addition, at the same time this case was filed, the individual Plaintiffs also filed a personal injury cause of action against this Defendant in state court.

2

to accept the plaintiff's legal conclusions. *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The court's assessment of whether the complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. The reviewing court must read the complaint as a whole rather than analyzing each allegation in isolation. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## DISCUSSION

Defendant Gilster moves to dismiss Plaintiffs' claims on two grounds: 1) that the claims are barred because the Workers' Compensation Law provides the exclusive remedy for any injury the Plaintiffs have suffered; and/or 2) their claims are barred by Missouri's general five-year statute of limitations.

**A. Missouri's Workers' Compensation Law.**

First, Defendant argues Plaintiffs' claims are barred because they are covered by Missouri's Worker's Compensation Law which provides the exclusive remedy for the alleged injuries. Plaintiffs' alleged injuries arise out of their exposure to diacetyl during their employment at the Gilster plant. Therefore, their claims fall under the category of occupational disease under the Worker's Compensation laws. Plaintiffs allege they were not injured "by a specific exposure during a single work shift" or by a specific "unexpected traumatic event or unusual strain."

Missouri's Worker's Compensation laws have changed since the time Plaintiffs first began their employment at Gilster (which for two of the Plaintiffs was the early 1990s and the other 2000) through the filing of their lawsuit in December 2013. In 2005, the laws were

3

changed with regard to the exclusive remedy provisions for work-related injuries resulting from occupational disease. See, *Amesquita v. Gilster-Mary Lee Corp.,* 408 S.W.3d 293, 302 (Mo. Ct. App. 2013). Defendant states the change in law "arguably" exempted occupational disease, but it does not offer any case law to dispute the holding in *Amesquita*. See also, *State ex rel.KCP & L Greater Missouri Operations Co. v. Cook,* 353 S.W.3d 14 (Mo. App. W.D. 2011)("holding the plaintiff's "repeat-exposure occupational disease claims" were not precluded by § 287.120 under the 2005 amendment").

Defendant argues whether or not the 2005 change exempted occupational disease is irrelevant because the Workers' Compensation Law as it existed at the time of the alleged injury is the law that should apply. Defendant cites to several appellate court decisions that hold the date of the injury controls the date of the applicable Worker's Compensation law. See, *SSM Health Care v. Hartgrove,* 456 S.W.3d 467 (Mo. App. W.D. 2014); *Pavia v. Smitty's Supermarket,* 366 S.W.3d 542 (Mo. App. S.D. 2012); *Angus v. Second Injury Fund,* 328 S.W.3d 294 (Mo. App. W.D. 2010); and *Lawson v. Ford Motor Co.,* 217 S.W.3d 345 (Mo. App. E.D. 2007). It is clear Missouri courts have held that the Worker's Compensation laws in effect at the time of the alleged injury apply, and that the 2005 amendment to the Worker's Compensation law does not apply retroactively to injuries that occurred prior to that change. *Id.* However, these Missouri cases do not involve occupational disease injuries, or more specifically, exposure cases. Rather, the cases cited by Defendant involve incidents where a specific "accident" or injury occurred at a specific time.

In this case, Plaintiffs' claims arise out of their alleged exposure to diacetyl during the course of their employment. Any alleged injury arising out of this exposure involves an occupational disease injury. Prior to the 2005 amendment, occupational disease was found to be

4

included in the definition of "accidents" under Missouri's Worker's Compensation laws. However, as previously mentioned, in 2005 that was changed and the Missouri Courts found that occupational disease was no longer included.[3]

The exclusivity provision raised by Defendant is found in Section 287.120.

That provision states:

1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment, and shall be released from all other liability thereof whatsoever, whether to the employee or any other person. The term "accident" as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person.

2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter..

Section 287.020.2 defines an "accident" as: "an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift."

Prior to 2005, the definition of accident provided in relevant part "that the word "accident" as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen identifiable event or series of events happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." § 287.020.2, RSMo 2000.

The 2005 amendments replaced this definition with the following:

---

[3] In 2013 the law was again amended and occupational disease was explicitly added back into the law.

5

> The word "accident" as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor. § 287.020.2.

See, *Amesquita v. Gilster-Mary Lee Corp.,* 408 S.W.3d 293, 299-300 (Mo. Ct. App. 2013).

The change in the Worker's Compensation Laws was applied to a similar claim in *Amesquita.* In *Amesquita*, the plaintiffs worked at the plant for a number of years prior to 2005. Brief for Respondents at *Amesquita,* et al., Plaintiffs-Appellants, v. *Gilster-Mary Lee Corporation*, et al., Defendants-Respondents, 2013 WL 2576669 (Mo. App. E.D. 2013) at 6. Plaintiffs also worked in the plant after August 28, 2005. Brief for Appellants at *Amesquita,* et al., Plaintiffs-Appellants, v. *Gilster-Mary Lee Corporation*, et al., Defendants-Respondents, 2013 WL 1720649 (Mo.App. E.D. 2013) at 10. The plaintiffs claimed they suffered occupational diseases from diacetyl exposure while working at the facility and that Gilster was liable in tort for negligence. *Amesquita v. Gilster-Mary Lee Corp.,* 408 at 295. The Missouri Court of Appeals held that the plaintiffs' work related injuries as a result of occupational disease were not limited to the remedies under the Worker's Compensation laws. *Id.* at 301. As a result, the plaintiffs were allowed to proceed with their tort claims.

In *State ex rel. KCP & L Greater Missouri Operations Co. v. Cook*, the plaintiff worked for his employer for thirty-four years before he retired in 1988. 353 S.W.3d at 16. He was then diagnosed with mesothelioma in February 2010 and filed his lawsuit in April 2010. *Id.* The plaintiff alleged he was exposed to asbestos during the course of his employment and that the exposure directly and proximately caused him to develop mesothelioma. *Id.* His employer moved for summary judgment asserting an affirmative defense that the claims were barred by Worker's Compensation Law's exclusive remedy provisions. *Id.* The Court of Appeals held:

6

> Ultimately, however, the issue here is not whether repeat-exposure occupational disease claims are compensable through the worker's compensation system. Gunter is not seeking to pursue a workers' compensation remedy for his occupational disease-related claims. Instead, he is seeking to pursue a judicial remedy. We need only decide whether his common-law claims are precluded by § 287.120, which they plainly are not.

*Id.* at 30.

Here, the named Plaintiffs' employments all ended well before 2005.[4] However, Plaintiffs argue that their medical monitoring claims did not accrue upon exposure. Rather, it is Plaintiffs' position that their injuries did not accrue until they were "capable of ascertainment." Plaintiffs argue in order for their claim to accrue they "must have reason to know a significantly increased risk exists that requires medical monitoring." See, *McGhee v. W.R. Grace & Co.,* 312 S.W.3d 447, 451 (Mo. App. W.D. 2010); *Sellers v. Trans World Airlines, Inc.,* 752 S.W.2d 413, 415 (Mo. App. W.D. 1988)(overruled on other grounds).

Here, there is no dispute the exposure to the named Plaintiffs occurred prior to 2005. However, at this time, the record before the Court does not provide sufficient evidence to determine when Plaintiffs' alleged injuries accrued for purposes of assessing the application of the Worker's Compensation laws. For example, all three Plaintiffs allege they "suffer from respiratory disease," but at this time there is no evidence as to when they developed their alleged injury. Further, for purposes of ruling on a 12(b)(6) motion, there is no evidence as to when Plaintiffs were capable of ascertaining any alleged claim based on their exposure to diacetyl.

Here, while the Court acknowledges Defendant's argument that the Worker's Compensation Law prior to 2005 *may* apply to Plaintiffs' claims, at this stage the Court finds there is not enough evidence to support Defendant's Motion to Dismiss.

---

[4] Plaintiffs' alleged class includes "all persons who, prior to January 1, 2008, worked for a period of one (1) Year or more at the Gilster Mary-Lee Corporation plant in Jasper, Missouri.

7

### B. Statute of Limitations.

Defendant also argues even if Plaintiffs' claims are not barred by the Worker's Compensation laws, they should be barred by the statute of limitations. The 8th Circuit has stated, "we recognize that when it 'appears from the face of the complaint itself that the limitation period has run,' a limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss. *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004); citing, *Wycoff v. Menke*, 773 F.2d 983, 984–985 (8th Cir. 1985). Defendant argues that although the statute of limitations is ordinarily an affirmative defense, here Plaintiffs' claims should be dismissed for failure to state a claim under 12(b)(6). Defendant further argues the statute of limitations begins to run when Plaintiffs' alleged injury is "sustained and capable of ascertainment."

However, as stated above, this Court finds at this stage it does not have enough evidence to determine when Plaintiffs' claims were "capable of ascertainment." Therefore, for purposes of ruling on Defendant's Motion to Dismiss the Court denies the motion.

### CONCLUSION

While the Court's Order does not address the merits of this case, it finds Plaintiffs have pled enough to survive a motion to dismiss and that Defendant's arguments go beyond the face of Plaintiffs' Complaint. Therefore, for the reasons stated herein, Defendant's Motion to Dismiss (Doc. No. 83) is **DENIED.**

**IT IS SO ORDERED.**

DATED:	August 13, 2015	  */s/ Douglas Harpool*  
                                                                       **DOUGLAS HARPOOL**  
                                                                       **UNITED STATES DISTRICT JUDGE**