IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| PATRICIA HOOD, et al., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 3:14-cv-05012-MDH |
| GILSTER-MARY LEE CORPORATION, | ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's Motion for Rule 23 Class Certification. (Doc. 113). The parties have fully briefed the pending motion and on August 9, 2016 the Court held oral argument. The matter is now ripe for review.

## BACKGROUND

Plaintiffs originally filed this suit in Jasper County, Missouri on behalf of themselves and all others similarly situated alleging they are former or current employees of defendant Gilster-Mary Lee which owns and operates a microwave popcorn packaging plant in Jasper, Missouri.[1] Plaintiff claims she suffers from lung impairment and/or suffers from lung impairment that has not yet fully manifested resulting from exposure to natural and artificial butter flavoring products, compounds and ingredients, including but not limited to diacetyl. Diacetyl was used at the Jasper plant beginning in 1986 until approximately March 2008 and it has been concluded that exposure to diacetyl vapors may cause increased incidence of lung problems or respiratory diseases. As a result, the Jasper plant, where diacetyl was used in the butter flavoring, has been

---

[1] Nora De La Rosa is the only remaining named plaintiff.

1

the focus of litigation in multiple cases filed by current and former employees. The previous personal injury cases appear to have focused on the manufacturers of the butter flavoring. Prior claims against the Jasper plant were primarily brought as Missouri Worker's Compensation claims based on personal injuries employees may have suffered as a result of their exposure.

In this case, Plaintiff moves the Court to certify the following class of individuals:

**All persons who, prior to January 1, 2008, worked for a period of one (1) year or more at the Gilster-Mary Lee plant in Jasper, Missouri.**

Plaintiff seeks this class for the purpose of establishing a medical monitoring program in order to diagnose the warning signs of lung disease caused by exposure to the diacetyl contained in the butter flavoring used in the production of microwave popcorn at the Jasper plant. Plaintiff argues an individual claim for medical monitoring is not "economically viable," and if a class is not certified Plaintiff and other class members will have no remedy for their exposure to diacetyl at the Jasper plant. Defendant raises multiple arguments in opposition to class certification, including the predominance of individual issues, the superiority of either individual litigation or worker's compensation claims, and the unmanageability of this case as a class action.

The lawsuit was originally filed in Missouri state court and Defendants removed the case to federal court under the Class Action Fairness Act. See 28 U.S.C. §§ 1332, 1441(a)-(b), 1453. This court was (and in fact still is) convinced from the evidence previously presented that the overwhelming majority of the members of the putative class are Missouri residents. Because of the belief and the fact the alleged exposure took place in Missouri while putative class members were physically working in Missouri, for a Missouri employer, in an employment relationship governed by Missouri employment and Worker's Compensation law, this Court ruled that remand was appropriate based on CAFA's local-controversy exception. See *Hood v. Gilster-*

*Mary Lee Corp.*, 2015 WL 328409 (W.D. Mo. Jan. 26, 2015), citing 28 U.S.C. § 1332(d)(4). At the time, this Court's prior decision was consistent with decisions of other district courts interpreting the proof requirements required for remand under CAFA. See e.g., *Elsea v. Jackson, Cnty., Mo.,* 2010 WL 4386538 (W.D. Mo. Oct. 28, 1010)[2], *Randall v. Evamor*, Inc., 2010 WL 1727977 (E.D. Mo. Apr. 29, 2010), *Tonnies v. Southland Imports, Inc*., 2009 WL 3172565 (E.D. Mo. Sept. 29, 2009), *Clover v. Sunset Auto Co*., 2009 WL 2757050 (E.D. Mo. Aug. 26, 2009), and *Redd v. Suntrup Hyundai, Inc*., 2009 WL 2568054 (E.D. Mo. Aug. 18, 2009).

However, on appeal, the 8th Circuit reversed this Court's order of remand, and in essence adopted a new higher standard of proof finding Plaintiffs had failed to meet the new evidentiary burden of proving conclusively that a sufficient number of the former Missouri employees were actually still Missouri residents. *Hood v. Gilster-Mary Lee Corp*., 785 F.3d 263, 266 (8th Cir. 2015). This court is therefore left to decide this case pursuant to the federal jurisdiction provided in CAFA.

## **DISCUSSION**

For the reasons set forth herein, it is clear to this Court that Plaintiff would prevail in her request for class certification of a medical monitoring claim under the Missouri Supreme Court's analysis. This case is very similar to class action cases on medical monitoring decided by both the Missouri Supreme Court and the Court of Appeals. See, *Elsea v. U.S. Eng'g Co*., 463 S.W.3d 409 (Mo. Ct. App. 2015), reh'g and/or transfer denied (Apr. 28, 2015), transfer denied (June 30, 2015); and *Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712 (Mo. 2007). As more fully discussed herein, in each circumstance class action certification of classes seeking medical

---

[2] As discussed herein, in *Elsea*, after the case was remanded to state court, the Missouri Court of Appeals found plaintiff's class definition met the class certification requirements pursuant to Missouri state law.

3

monitoring benefits was found to be valid. However, the law of the Eighth Circuit is not nearly so welcoming of class actions seeking medical monitoring rights. See e.g*., In re St. Jude Med., Inc*., 425 F.3d 1116 (8th Cir. 2005); and *In re St. Jude Med., Inc*., 522 F.3d 836 (8th Cir. 2008).

As a result, Plaintiff's request for class certification seeking medical monitoring rights under the federal Class Action Fairness Act presents a difficult question. This court must evaluate Plaintiff's request for class certification in light of overwhelming support under state law, but in the shadows of concerns regarding class certification of medical monitoring cases clearly expressed in Eighth Circuit precedent.

Pursuant to Fed. R. Civ. P. 23(a) the following prerequisites must be met in order to bring a class action:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also *In re St. Jude Medical Inc.,* 425 F.3d 1116, 1119 (8th Cir. 2005).

Further, if the Plaintiff can meet the prerequisites of Fed. R. Civ. P. 23(a), a class action may then only be maintained if one of the following is met:

> (1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members

4

> predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.,* Fed. R. Civ. P. 23(b). Here, Plaintiff moves the Court to certify a class under Rule 23(b)(2) and/or Rule 23(b)(3).

Plaintiff has the burden of establishing that the requirements of Fed. R. Civ. P. 23 have been met in order to certify a class. *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013). Further, the Court has broad discretion in determining whether class certification is appropriate. *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir. 2012).

**1. Rule 23(a)**

Initially, Plaintiff must satisfy the four requirements of Rule 23(a). Defendant does not contest the first element, numerosity, but disputes that Plaintiff is able to demonstrate commonality, typicality or adequacy. Therefore, the Court will address those elements first.

**A. Typicality**

"The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). In establishing typicality, Plaintiff must identify persons who have been subjected to the same or similar treatment, or in this case exposure, as plaintiff. See *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir. 1977). Typicality is generally considered to be met "if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton v. Union Nat. Bank,* 688 F.2d 552, 561-62 (8th Cir. 1982) (internal citations omitted).

Defendants only argument against Plaintiff's ability to meet the typicality requirement is that she worked at the Jasper Plant from 1993 – 2000 as a permanent, regular employee and that her employment is not typical of the temporary agency employees who "formed a substantial part of the Jasper plant work force."

Plaintiff states she spent time in nearly every area of the plant during her employment, was exposed to diacetyl in her employment and is at an increased risk for developing diacetyl induced lung disease making her claims typical of those in the class she seeks to represent. The Court finds based on the limited relief sought by Plaintiff (medical monitoring), and the class she seeks to certify, the proposed members of the class stem from a single "event," i.e. exposure to diacetyl in the Jasper plant, and are based on the same requested relief, i.e., medical monitoring. The Court finds Plaintiff has met this element.

### B. Adequate Representation

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent," and the class representative is required to be a member of the class and "possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 625–26, 117 S. Ct. 2231, 2250–51, 138 L. Ed. 2d 689 (1997).

Defendant argues numerous reasons it believes Plaintiff cannot adequately represent a class in this case. Defendant first contends Plaintiff has not been diagnosed with any diacetyl related lung disease and that her remedy for any consequence from that exposure will be subject to pre 2014 Worker's Compensation Law. Defendant further argues Plaintiff participated in the national Institute of Occupational Safety and Health ("NIOSH") testing but did not obtain her results and therefore should be disqualified as a representative. Finally, Defendant points to a

criminal marriage fraud conviction from 1989 as a basis to disqualify Plaintiff as an adequate representative.

Here, Plaintiff seeks to establish a medical monitoring program to identify any lung diseases that were caused by exposure to diacetyl in the Jasper plant. There is no indication of a conflict of interest between Plaintiff and the proposed class and Plaintiff would certainly be a member of the proposed class. The Court makes no further determination regarding whether Plaintiff's individual claim would be valid, or whether her claim specifically would be subject to the statute of limitations or worker's compensation laws. However, based on the Court's findings below, whether Plaintiff would be an adequate representative is not determinative of this Court's ruling. Nonetheless, for purposes of this Order, the Court finds Plaintiff has met this burden.

### C. Commonality

The 8th Circuit has stated commonality, under Rule 23(a)(2) requires Plaintiff to establish there are questions of law or fact common to all the proposed plaintiffs. *Paxton v. Union Nat. Bank,* 688 F.2d at 561. Commonality may be satisfied "when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *DeBoer v. Mellon Mortgage Co.,* 64 F.3d at 1174. However, "commonality requires a showing that class members "have suffered the same injury." *Powers v. Credit Mgmt. Servs., Inc.,* 776 F.3d 567, 571 (8th Cir. 2015) (internal citations omitted). "What matters to class certification ... <u>is not the raising of common 'questions'</u> - even in droves - but, rather the capacity of a classwide proceeding to generate <u>common answers</u> apt to drive the resolution of the litigation." *Id*. (<u>emphasis added</u>).

On the other hand, the analysis pursued by Missouri state courts differs from that in the 8th Circuit and has focused on whether common questions exist. Missouri courts have found

7

commonality to exist in medical monitoring cases stating: "Here, it is the common fact of exposure to a set of toxins from a single source that is the common and overriding issue in Plaintiffs case." *Elsea v. U.S. Eng'g Co.,* 463 S.W.3d at 419; see also, *Meyer ex rel. Coplin v. Fluor Corp.,* 220 S.W.3d at 719 ("The significance and extent of toxic exposure is primarily an issue of common proof. Under this theory of liability, the individual factors identified by the circuit court are not particularly relevant because the need for monitoring is based on a common threshold of exposure. Whether Plaintiff is able to prove this theory is, at this stage, irrelevant because the sole issue is whether Plaintiff met the requirements for a cause of action, not whether Plaintiff will ultimately prevail."). The Missouri courts found commonality had been met because the "the significance and extent of toxic exposure is primarily an issue of common proof" and the need for medical monitoring is based on the common threshold of exposure. *Id.*

As the Court initially stated, there is a clear and significant divergence between the Missouri state court opinions and the 8th Circuit's analysis of class certification of medical monitoring in toxic exposure cases. Plaintiff argues, citing to the Missouri state cases, that the following issues are common to the members of Plaintiff's proposed class: 1) whether there were significant levels of diacetyl present in the Jasper plant; 2) whether as a result of exposure to diacetyl Plaintiff, and the proposed class members, are at an increased risk of developing lung disease; and 3) whether medical monitoring is necessary to diagnose any diacetyl induced lung disease.

On the other hand, Defendant argues while Plaintiff has identified common questions that may exist between the Plaintiff and the potential class members, there are no common answers as required by 8th Circuit analysis. For example, Defendant argues the levels of diacetyl exposure vary widely based on the time a potential class member worked in the plant. This is due, in part,

8

based on the use of respirators and a supplied air system that was implemented during the time frame of the proposed class.  Defendant also argues the length of employment of each plaintiff, which correlates to the exposure levels of each plaintiff, will greatly vary.  Further, Defendant argues employees who may have worked in the mixing room where the diacetyl was used in 1999 would have entirely different exposure than an employee who worked in an office in 2007.  Finally, Defendant argues there is no common answer to the individual medical issues each plaintiff may potentially have.  Defendant argues for example, class members already diagnosed with lung disease would not need to be re-diagnosed and other individuals who have no symptoms 30 years after exposure do not need medical monitoring at this time.

In response to these arguments, Plaintiff states that the reports conducted by NIOSH have shown that the recorded levels of diacetyl in all areas of the Jasper plant, including offices, outside the plant, the packing area, and the mixing room, exceeded the proposed standard.  Plaintiff offers there is a common question of exposure that applies to all the members of the class and therefore both certification and medical monitoring are appropriate.

This Court is mindful that the 8th Circuit precedent on toxic exposure medical monitoring cases is binding on this Court for purposes of analyzing Plaintiff's motion to certify the class.  The Court believes the purported class has the common question of exposure to diacetyl.  However, despite the common question of exposure, there may not be a common answer to whether class members "have suffered the same injury."  Certainly a wide variety of responses to the various degrees of injury would need to follow.  Unique medical histories and exposure levels would likely lead to variations in appropriate monitoring protocols.

2. **Rule 23(b)**

If Plaintiff has satisfied the requirements of Rule 23(a), the Court must still determine if Plaintiff is able to maintain the certification of a class under 23(b).  Plaintiff moves the Court to

9

certify the class under either Federal Rule 23(b)(2) which provides for injunctive relief and/or Federal Rule 23(b)(3) based upon the fact that common issues predominate in the case and therefore class action is a superior vehicle for resolution of the claims presented.

### A. 23(b)(3)

Rule 23(b)(3) requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 569 (8th Cir. 2015).

Once again, the Court has noted the issue of whether questions of law or fact are common to class members differs greatly when analyzed under Missouri state court versus federal court opinions. "The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *Blades v. Monsanto Co.*, 400 F.3d 562, 566–67 (8th Cir. 2005) (internal citations omitted). If the evidence needed to make a Plaintiff's prima facie case will vary from plaintiff to plaintiff then it is an individual question. *Id.* However, if plaintiffs can use the same evidence for each member to establish a prima facie claim, then it becomes a common question. *Id.* In making this determination, the Court may conduct a limited preliminary inquiry, looking behind the pleadings. *Id.* ("In conducting this preliminary inquiry, however, the court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs general allegations are true, common evidence could suffice to make out a prima facie case for the class.").

In discussing the plaintiffs' request for "the highly individualized remedy" of a medical monitoring class, the 8th Circuit stated "the need for detailed and individual factual inquiries concerning the appropriate remedy for any violation still weighs strongly against class

10

certification." *In re St. Jude Med., Inc.*, 522 F.3d 836, 840 (8th Cir. 2008); citing *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir.1977) (en banc); *Abrams v. Interco Inc.*, 719 F.2d 23, 31 (2d Cir.1983); see also *Amchem Products, Inc. v. Windsor*, 521 U.S. at 624 (1997). The 8th Circuit cited to *Amchem Products* which stated exposure only plaintiffs will "incur different medical expenses because their monitoring and treatment will depend on singular circumstances and individual medical histories." *Id.* at 840-841.

On the other hand, in *Meyer ex rel. Coplin v. Fluor Corp.*, the Missouri Supreme Court reversed and remanded the denial of class certification in a tort action based on lead exposure. 220 S.W.3d 712 (Mo. 2007). The plaintiff "alleged negligence, strict liability, private nuisance, and trespass as theories of liability and sought compensatory damages to establish a medical monitoring program for class members." *Id.* at 714. The Missouri Supreme Court stated: "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." *Id.* at 716. The Court found that medical monitoring is "a compensable item of damage when liability is established under traditional tort theories of recovery." *Id.* at 717.

> The trial court denied class certification stating:
>
> Individual issues will necessarily predominate over common issues in this case. These issues include the age at which exposure occurred, the nature of the exposure, the time period over which the exposure occurred, the blood lead level, the existence of other sources such as lead paint for any presence of lead, whether the individuals are presently suffering from any lead related injuries, whether the individuals are still being exposed or whether such exposure terminated, if the exposure to lead in Herculaneum has terminated how long ago it terminated, and whether there is any need for a particular individual to be monitored.

*Id.* at 719. However, in reversing this finding, the Missouri Supreme Court stated:

> It is the common fact of exposure to a set of toxins from a single source that is the common and overriding issue in Plaintiff's case. The significance and extent of toxic exposure is primarily an issue of common proof. Under this theory of

11

liability, the individual factors identified by the circuit court are not particularly relevant because the need for monitoring is based on a common threshold of exposure. Whether Plaintiff is able to prove this theory is, at this stage, irrelevant because the sole issue is whether Plaintiff met the requirements for a cause of action, not whether Plaintiff will ultimately prevail.

*Id.*

Further, in *Elsea v. U.S. Eng'g Co.*, the Missouri Court of Appeals reversed and remanded a case in which the trial court denied class certification in a medical monitoring case.[3] 463 S.W.3d 409 (Mo. Ct. App. 2015). The plaintiffs in *Elsa* were individuals exposed to asbestos fibers by U.S. Engineering's handling, storage, removal and disposal of asbestos during a renovation and repair of the Jackson County Courthouse.[4] *Id.* at 413. The plaintiff sought compensatory damages to establish a medical monitoring program for class members. *Id.* at 414. The court stated the "general consensus that has emerged in [medical monitoring] cases is that a plaintiff can obtain damages for medical monitoring upon a showing that the plaintiff has a significantly increased risk of contracting a particular disease relative to what would be the case in the absence of exposure." *Id.* at 417. The Court found that a single common issue, despite the fact that it may entail numerous remaining individual questions, is enough to meet commonality. *Id.* at 419. Further, the Court found that the circuit court's determination that

---

[3] The Missouri Court of Appeals stated: "A class certification hearing is a procedural matter in which the sole issue is whether plaintiff has met the requirements for a class action. Thus, the trial court has no authority to conduct a preliminary inquiry into whether the plaintiff has stated a cause of action or will prevail on the merits. Although the class certification decision lies in the circuit court's discretion the courts should err in close cases in favor of certification because the class can be modified as the case progresses. The issue is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether plaintiff has met the requirements for a class action." *Id.* at 416 (internal citations omitted).

[4] The proposed class was "1. Missouri residents who were employed by the State of Missouri or employed by the County of Jackson, and worked inside the Courthouse for a period of time exceeding two consecutive weeks from 1983 to the present, or because of their duties, were required to work inside the Courthouse for a period of more than 80 hours in a year from 1983 to the present. 2. Missouri residents who, as a result of their employment, were required to spend more than two consecutive weeks in the Courthouse, or over the course of any given year, were required to spend a total of eighty hours in the Courthouse." *Id.* at 415.

12

individual issues involving causation and damages predominated over common issues was reversible. *Id.* at 421.

> The predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. To satisfy this requirement, not every single issue must be common to all class members. In fact, the predominance requirement can be satisfied if there is one single common issue that is the overriding issue in the litigation. This single predominant issue need not even be dispositive of the case. [T]he fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance.

*Id.* at 422. In *Elsea,* the court held "the medical monitoring issue affecting the entire putative class is based upon the common and overriding fact of a threshold level of asbestos exposure caused by a single source." *Id.* As the Court has discussed herein, under Missouri's state court opinions, the class certification of Plaintiff's claim for medical monitoring appears appropriate.

On the other hand, the 8th Circuit has denied class certification of a medical monitoring claim stating: "[p]roposed medical monitoring classes suffer from cohesion difficulties, and numerous courts across the country have denied certification of such classes." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005) (internal citations omitted). The 8th Circuit rejected the "highly individualized remedy of medical monitoring" because "it presented too many individual and legal issues." *In re St. Jude Med., Inc.,* 522 F.3d at 840. The 8th Circuit has stated the court may decline to certify such a class "where the predominance of individual issues is such that limited class certification would do little to increase the efficiency of the litigation." *In re St. Jude Med., Inc.,* at 841.

Here, the Court finds that based on the 8th Circuit's analysis, there are other available methods for fairly and efficiently adjudicating this medical monitoring claim. Some members of this class have already pursued other methods. Exposure only plaintiffs, as discussed in *St Jude*, will incur different medical expenses because their treatment and monitoring will depend on

13

individual medical histories. Further, some members of the proposed class have either already filed a worker's compensation claim, or may have that method of relief available to them for fairly and efficiently adjudicating their claim. As a result, under the 8th Circuit's precedent, the Court finds Plaintiff has failed to set forth the requirements to certify a class under Rule 23(b)(3).

### B. 23(b)(2)

Rule 23(b)(2) states the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole. *See Paxton v. Union Nat. Bank*, 688 F.2d at 563. "Class certification under Rule 23(b)(2) is proper only when the primary relief sought is declaratory or injunctive." *In re St. Jude Med., Inc.,* 425 F.3d 1116, 1121 (8th Cir. 2005). Further, "although Rule 23(b)(2) contains no predominance or superiority requirements, class claims thereunder still must be cohesive." *Id.* A "suit could become unmanageable and little value would be gained in proceeding as a class action ... if significant individual issues were to arise consistently." *Id.* (internal citations omitted).

Again, with regard to medical monitoring cases, the 8th Circuit has stated "proposed medical monitoring classes suffer from cohesion difficulties, and numerous courts across the country have denied certification of such classes." *Id.* at 1122, citing, *Ball v. Union Carbide Corp.*, 385 F.3d 713, 727–28 (6th Cir.2004); *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1195–96, amended, 273 F.3d 1266 (9th Cir.2001); *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 143-146 (3d Cir.1998); *Boughton v. Cotter Corp*., 65 F.3d 823, 827 (10th Cir.1995). "[Exposure-only plaintiffs] will also incur different medical expenses because their monitoring and treatment will depend on singular circumstances and individual medical histories." *Id.* (internal citation omitted).

14

Plaintiff argues because the purported class only seeks medical monitoring, as an injunctive remedy, a mandatory class under Rule 23(b)(2) is the "preferred mechanism" for certification. Plaintiff contends all the members of the putative class "suffered the same underlying injury," i.e. exposure to diacetyl. Plaintiff again cites to the Missouri Court of Appeals decision stating "class actions which aggregate small claims that could not otherwise be brought are exactly the type of claims that satisfy the superiority requirement." In balancing the relative merits of class action versus alternative methods of adjudicating the controversy, courts should consider "the inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Elsea v. U.S. Eng'g Co.,* 463 S.W.3d at 423 (internal citations omitted).

However, for the reasons set forth herein, the Court finds that class certification for purposes of medical monitoring is inappropriate based on the 8th Circuit's holdings. Here, there may be numerous differences between the class members, including some who may have already been diagnosed with lung disease, may already be under the care of a physician and/or medical monitoring, and those that may have no symptoms at all. Further, other potential class members may have already brought personal injury suits seeking the same relief. In addition, some plaintiffs have already filed worker's compensation claims which may cover medical monitoring for their claims and for many of the proposed class members worker's compensation benefits may be available. Finally, if medical monitoring revealed an exposure related disease, identification of adequate remedies would require individual analysis either through the worker's compensation system or the Missouri court system. Therefore, for all the reasons discussed herein, while the Court believes this case would be certified as a class for medical monitoring in the state court system, the federal law does not uphold the same result.

15

Case 3:14-cv-05012-MDH   Document 137   Filed 09/30/16   Page 15 of 16

Finally, this Order should be construed narrowly as denying certification of only the class as requested in Plaintiff's motion.  For example, should Plaintiff choose to move to certify a class that included only Missouri residents, or a class that otherwise meets the CAFA exception under 28 U.S.C. § 1332(d), in light of the 8th Circuit's recent opinion, the class might well be found to meet the requirements of certification for medical monitoring by Missouri courts under Missouri law.  See *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d at 266 ("The Seventh Circuit notes two ways plaintiffs can meet their burden: (1) affidavit evidence or statistically significant surveys showing two-thirds of the class members are local citizens, or (2) redefine the class as only local citizens.") (internal citations omitted).

## CONCLUSION

**WHEREFORE,** for the reasons stated herein, the Court **DENIES** Plaintiff's Motion for Rule 23 Class Certification.  (Doc. 113).

**IT IS SO ORDERED.**

DATED: September 30, 2016

      /s/ Douglas Harpool_____
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**